# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Justin Korn, individually and on behalf of all others similarly situated, <br><br>                   Plaintiff, <br><br>     v. <br><br> Amazon.com, Inc., <br><br>                   Defendant. | Case No. 1:25-cv-10802-WGY |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

I.    INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.    ARGUMENT ...................................................................................................................... 1

    A.    Plaintiff States a Claim Under Mass. Gen. Laws ch. 149, § 19B(2)
Because Amazon Subjected Him to a Lie Detector Test ........................................ 1

    B.    Plaintiff Has Statutory Standing ............................................................................ 5

        1.    Defendant Improperly Imputes Article III Standing Requirements
To Mass. Gen. Laws Ch. 149, § 19B(4)'s "Person Aggrieved"
Language ..................................................................................................... 5

        2.    Plaintiff Properly Alleges "Aggrievement" Under the Statute ................. 6

        3.    The Legislature Drafted the Statute to Confer Standing on
Individuals Whose Statutory Rights Were Violated ................................ 10

        4.    Defendant Relies on Case Law for Non-Analogous Statutes ................. 13

        5.    Auguste is Unpersuasive in Light of Kenn ............................................. 15

        6.    Plaintiff's Interpretation Promotes Compliance ..................................... 16

    C.    The Statute Provides A Private Right of Action For Violations of
Subsection (2), Which Includes Paragraph (b) ................................................... 17

III.    CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*All. AFSCME/SEIU, AFL-CIO v. Com.*,
  427 Mass. 546 (1998) ..................................................................................... 14

*Ambrose v. Bos. Globe Media Partners LLC*,
  2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................................. 2, 3, 4, 5

*Baker v. CVS Health Corporation*,
  717 F. Supp. 3d 188 (D. Mass. 2024) ......................................................... 6, 10, 18

*Bassett v. Triton Techs., Inc.*,
  2017 WL 1900222 (Mass. Super. Mar. 6, 2017) ................................................ 15

*Bd. of Health of Sturbridge v. Bd. of Health of Southbridge*,
  461 Mass. 548 (2012) ..................................................................................... 15

*Bos. Edison Co. v. Bos. Redevelopment Auth.*,
  374 Mass. 37 (1977) ........................................................................................... 7

*Charles C. v. Com.*,
  415 Mass. 58 (1993) ......................................................................................... 11

*Com. v. Chamberlin*,
  473 Mass. 653 (2016) ....................................................................................... 11

*Commonwealth v. Harris*,
  443 Mass. 714 (2005) ....................................................................................... 12

*Doe v. Tenet Healthcare Corp.*,
  731 F. Supp. 3d 142 (D. Mass. 2024) ............................................................... 2, 3

*First Christian Church v. Brownell*,
  332 Mass. 143 (1955) ......................................................................................... 9

*Furtado v. Plymouth*,
  451 Mass. 529 (2008) ....................................................................................... 12

*Garcia v. Right at Home, Inc.*,
  2016 WL 3144372 (Mass. Super. Jan. 19, 2016) ............................................... 9

*Ginther v. Comm'r of Ins.*,
  427 Mass. 319 (1998) ....................................................................................... 15

*Goldman v. Sec'y of Exec. Off. of Health & Hum. Servs.*,
   101 Mass. App. Ct. 427 ............................................................................ 14

*Hamani v. Com., Off. of Pub. Safety & Sec., Dep't of Crim. Just. Info. Servs.*,
   2014 WL 7506859 (Mass. Super. Dec. 11, 2014) ................................... 9

*Harvard L. Sch. Coal. for C.R. v. President & Fellows of Harvard Coll.*,
   413 Mass. 66 (1992) ....................................................................... 14, 15

*Higgins v. Dep't of Env't Prot.*,
   64 Mass. App. Ct. 754 (2005) .............................................................. 13

*Hoffman v. Howmedica, Inc.*,
   373 Mass. 32 (Mass. 1977) .................................................................. 10

*Hongyu Luo v. Tao Ceramics Corp.*,
   2014 WL 3048679 (Mass. Super. Apr. 10, 2014) ................................. 17

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
   2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ........................................... 2

*Kenn v. Eascare, LLC*,
   103 Mass. App. Ct. 643 (2024) ....................................................Passim

*Kenner v. Zoning Bd. of Appeals of Chatham*,
   459 Mass. 115 (2011) .......................................................................... 15

*Kuong v. Wong*,
   2013 WL 6579800 (Mass. Super. June 13, 2013) ................................ 17

*LaChance v. Commissioner of Correction*,
   475 Mass. 757 (2016) ............................................................................ 6

*Loc. 1445, United Food & Com. Workers Union v. Police Chief of Natick*,
   29 Mass. App. Ct. 554 (1990) ........................................................ 7, 13

*Lynch v. Signal Fin. Co. of Quincy*,
   367 Mass. 503 (1975) ............................................................................ 9

*Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*,
   876 F.2d 1051 (1st Cir. 1989) ............................................................... 6

*Massachusetts State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc.*,
   469 Mass. 675 (Mass. 2014) ............................................................... 10

*Plumb v. Casey,*
   469 Mass. 593 (2014) ........................................................................................ 11

*Pyle v. Sch. Comm. of S. Hadley,*
   423 Mass. 283 (1996) ................................................................................ 10, 18

*Sarvis v. Polyvore, Inc.,*
   2015 WL 5934759 (D. Mass. Aug. 24, 2015) ............................................... 5

*Saunders v. Hearst Television, Inc.,*
   711 F. Supp. 3d 24 (D. Mass. 2024) ............................................................. 9

*Union Trust Co. v. McGinty,*
   212 Mass. 205 (1912) .................................................................................... 11

*US Bank v. Nelson,*
   36 N.Y.3d 998 (N.Y. 2020) ......................................................................... 13

*Vita v. New England Baptist Hosp.,*
   494 Mass. 824 (2024) ................................................................................ 7, 9

**STATUTES**

Mass. Gen. Laws. Ch. 30A, § 14 ......................................................................... 13

Mass. Gen. Laws. Ch 40A, § 17 .......................................................................... 13

Mass. Gen. Laws. Ch 111B, § 150A .................................................................... 13

Mass. Gen. Laws. Ch 149, § 19B .................................................................. Passim

Mass. Gen. Laws. Ch 151B, § 5 ..................................................................... 13, 14

Mass. Gen. Laws. Ch 151B, § 9 ..................................................................... 13, 14

Mass. Gen. Laws. Ch 175, § 206D ...................................................................... 13

Mass. Gen. Laws. Ch 652, § 13 ........................................................................... 13

Mass. Gen. Laws Ann. Ch. 12, § 11H(a)(1) ....................................................... 12

Mass. Gen. Laws Ann. Ch. 12, § 11I ................................................................... 12

Mass. Gen. Laws Ann. Ch. 31, § 2(b) ................................................................. 12

Mass. Gen. Laws Ann. Ch. 91, § 18 .................................................................... 12

Mass. Gen. Laws Ann. Ch. 160, § 81 ......................................................................... 13

**REGULATIONS**

310 Mass. Code Regs. 9.02 ................................................................................. 12, 13

**OTHER AUTHORITIES**

HB 1123 ............................................................................................................ 12, 20

HB 5408 ................................................................................................................... 12

HB 6908 ................................................................................................................... 20

SB 1435 ................................................................................................................... 20

Plaintiff Justin Korn ("Plaintiff") respectfully submits the following memorandum in opposition to Defendant Amazon.com, Inc.'s ("Amazon" or "Defendant") motion to dismiss (ECF No. 22) ("MTD") the First Amended Complaint (ECF No. 17) ("FAC").

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Defendant's job applications violate two prongs of Mass. Gen. Laws ch. 149, § 19B ("§ 19B" or the "Statute").  First, although Defendant used a lie detector (as defined by § 19B(1)) in its job applications, it did not provide candidates, including Plaintiff and putative class members, an opportunity to opt out of or challenge the assessments, violating § 19B(2) (a "Testing Violation").  Second, Defendant did not provide Plaintiff and other applicants with written notice of their rights concerning lie detector tests as required § 19B(2)(b) (a "Notice Violation").  Plaintiff brings suit pursuant to § 19B(4) for injunctive relief and statutory damages for these violations.

Defendant argues that (1) its assessment is not a "lie detector test," (2) Plaintiff lacks standing, and (3) the Statute does not afford a private right of action for Notice Violations. Defendant is wrong.  The pleadings establish that the Amazon Workstyle Assessment is a lie detector test as defined by § 19B(1).  The Statute's "any person aggrieved by a violation of subsection (2)" language clearly describes a person in Plaintiff's position: a job applicant who has suffered the infringement of their right to the notice required under Mass. Gen. Laws ch. 149, § 19B(2)(b).  And this District has already held that the Statute authorizes suit by any person aggrieved by a violation of subsection (2), **which includes the notice requirement**.  Defendant's motion should be denied in its entirety.

## II.    ARGUMENT

### A.    Plaintiff States a Claim Under Mass. Gen. Laws ch. 149, § 19B(2) Because Amazon Subjected Him to a Lie Detector Test

Defendant contends that "Plaintiff alleges only that he took a personality test, not that he

was required or even asked to take a lie detector test prohibited by the statute." MTD at 8. This misstates the pleadings. The FAC establishes that the Amazon Workstyle Assessment administered to job applicants, including Plaintiff, constitutes a lie detector test. *See,* FAC ¶¶ 3-4, 8, 19-20, 26, 31, 43-44. Indeed, Defendant itself tells Amazon Workstyles Assessment takers that it "uses mechanisms to detect … attempts to … fabricate" (*id.* ¶ 22); the test "center[s] around … [the Amazon] Leadership Principles[,] [including] … [e]arn[ing] and keep[ing] … trust" (*id.* ¶ 25); and prompts are designed "as one might if aiming to cross-check answers to identify discrepancies[.]" *Id.* ¶ 24.

In an about-face from what it told job applicants, Defendant argues that the Amazon Workstyle Assessment is not a lie detector test as defined § 19B(1), because it does not "detect[] deception, untruths, or dishonesty." MTD at 1. This is an example of the "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used[,]" given the "informational asymmetry[]" between the parties. *E.g. In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024). Recognizing this dilemma, courts routinely hold that fact-intensive, privacy-related questions like those raised by Defendant require discovery for resolution. *See, e.g.*, *Ambrose v. Bos. Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) ("[A]lthough it is conceivable that after discovery it will become apparent that the [defendant] does not (as it maintains) transmit its digital subscribers' PII to Facebook in the manner [plaintiff] has alleged, at this juncture [plaintiff] has done enough to state a viable VPPA claim."); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024) ("[A]t the motion to dismiss stage, the alleged disclosure of … healthcare-related information … suffices[.]") (cleaned up).

Even Defendant's cited authority, *Auguste v. G4S Secure Sols. (USA), Inc.*, No. CV2014-

3311-BLS1 (Mass. Super. Apr. 25, 2016) (*"Auguste"*) is aligned, as it considered "[t]he facts revealed by the **summary judgment record**[.]" *Auguste* at *2 (emphasis added); *see also id.* at *8 ("the court must consider whether there is evidence in the record that would permit a finder of fact to conclude that G4S used the MMPI-2 as a [lie detector]."). *Auguste* is replete with references to facts borne out in the many months between plaintiff Auguste's first amended complaint, filed on January 22, 2015, and defendant G4S Secure Solutions' motion for summary judgment, filed (with opposition) on March 4, 2016. *See Auguste v. G4S Secure Solutions*, No. 1484CV03311, Dkts. 9, 21; *see also Auguste* at *9 (referring to plaintiff's expert, Dr. Mart), *id.* at 5 n.4 (referring to defendant's expert, Dr. Butcher); *id.* at 13 n.10 (considering how "[p]laintiff ha[d] offered no evidence that any psychologist administering the test for G4S ha[d] reported that an applicant was not truthful after analyzing the results of the applicant's MMPI-2."); *id.* at *11 (considering how "one of the psychologists … that administered plaintiff's test[] described it"). Just as *Auguste* merited considerable discovery, so too does the instant case.

Defendant's substantive arguments regarding the test are also erroneous. First, Amazon asserts that "the Workstyle Assessment presents pairs of wholly *subjective* statements and prompts applicants to indicate—via *subjective responses*—how well they believe those statements describe them." MTD at 5. According to Defendant, "[t]hese are not the sorts of statements from which any test can assess whether the answer is deceptive, untruthful, or dishonest." *Id.* But "deceive" means "to give a false impression"[1] and "truth" means "sincerity in action, character, and utterance."[2] Just as a polygraph might purport to detect whether someone sincerely identifies as a Red Sox fan (which is subjective, both as to the team and what it means to be a fan), Defendant's test asking applicants to "'[c]hoose the statement that best matches [their] work style[,]'" (FAC ¶

---

[1] Merriam-Webster, *Deceive*, https://www.merriam-webster.com/dictionary/deceive.
[2] Merriam-Webster, *Truth*, https://www.merriam-webster.com/dictionary/truth.

24) similarly purports to detect whether someone sincerely identifies with certain personal qualities. And just as someone can create a false impression about their baseball allegiances, job applicants can create a false impression of themselves. Defendant anticipates this, as the Workstyle Assessment warns applicants that it "uses mechanisms to detect … attempts to … fabricate" (*id.* ¶ 22), asks applicants to indicate they "understand that any misrepresentation will result in the rejection of [their] application[,]" (*id.* ¶ 23), and includes prompts designed "as one might if aiming to cross-check answers to identify discrepancies[.]" *Id.* ¶ 24.

Second, Defendant argues that its "mechanisms to detect … attempts to … fabricate" (*id.* ¶ 22) are meant to "validate the test, not detect lies," akin to the "L scale" at issue in *Auguste*. MTD at 5. But *Auguste* (which, again, was decided at summary judgment) is factually distinct. There, the MMPI-2 test at issue was designed to "uncover psychological suitability and risk of mental illness of applicants for high-risk employment[,]" (*Auguste* at *12), not to detect whether someone was being truthful about their work-related traits. A high score on the L scale merely "'alert[ed] whoever [was] interpreting the MMPI to look with caution at … the clinical scores[,]'" (*id.* at *11) and was not used to "reject[ a candidate's] application" for employment based on perceived "misrepresentation." FAC ¶ 23. Moreover, while the L scale could reflect either "efforts to deceive[ or] … [personality] style," (MTD at 10), Amazon never claims that its test validation mechanisms capture anything more than the former – i.e., "attempts to plagiarize, fabricate, or use outside assistance." FAC ¶ 22. In fact, Amazon's validation mechanisms are explicitly said to analyze "behavior," not personality. *Id.* Thus, *Auguste* is off point.

Finally, Amazon argues that "Plaintiff here, like the plaintiff in *Auguste*, insinuates at most that it is theoretically possible that Amazon could use the Workstyle Assessment for the purposes of detecting lies[,]" not that it "'is operated' or its results 'are used or interpreted'—for a prohibited

purpose." MTD at 7 (quoting § 19B(1)). Again, *Auguste* is inapposite. In *Auguste*, discovery yielded a "psychologist's letter (stating that Plaintiff was 'psychologically suitable for the position of Security Officer', that is, suitable to carry a firearm)[,] illustrat[ing] that the purpose of the MMPI-2 was the assessment of psychological suitability." *Auguste* at *12-13. Discovery yielded "no evidence that any psychologist administering the test for G4S ha[d] reported that an applicant was not truthful after analyzing the results of the applicant's MMPI-2." *Id.* at *13 n.10. In short, "neither G4S nor its independent contractors used or interpreted the MMPI-2 for the purpose of purporting to assist in or enable the detection of deception[.]" *Id.* at *13. Here, Plaintiff alleges that the "Amazon Workstyle Assessment … is operated, or the results of which are used or results of which are used or interpreted by an examiner for [lie detection]." FAC ¶ 4. The FAC includes an Amazon quote that says as much. *Id.* ¶ 22. Although Defendant attempts to undermine the pleadings' sufficiency, it does not offer evidentiary support that its lie detection is only "theoretically possible[.]" MTD at 7. Thus, the MTD's arguments as to the lie detector test at issue should be rejected. These are fact-intensive questions inappropriate for resolution at present.

**B.    Plaintiff Has Statutory Standing**

      **1.    <u>Defendant Improperly Imputes Article III Standing Requirements To Mass. Gen. Laws Ch. 149, § 19B(4)'s "Person Aggrieved" Language</u>**

Defendant argues that "Plaintiff does not—and cannot—plausibly allege any substantial injury" and thus lacks standing. MTD at 8. In so arguing, Defendant improperly imputes Article III standing requirements to the Statute's "person aggrieved" language. But statutory standing in Massachusetts is not coterminous with Article III. *See, e.g.*, *Sarvis v. Polyvore, Inc.*, 2015 WL 5934759, at *13 (D. Mass. Aug. 24, 2015), *report and recommendation adopted*, 2015 WL 6182226 (D. Mass. Sept. 14, 2015) (there is "Article III standing (constitutional standing)" and "statutory standing, i.e., defining the persons entitled to sue") (cleaned up).

The reason that Defendant omits any reference to Article III standing and instead attempts to impute its requirements to statutory standing is because it is Defendant's burden, as the removing party, to establish Article III standing. *See, e.g.*, *Kenn v. Eascare, LLC*, 103 Mass. App. Ct. 643, 649 (2024) ("[b]ecause they are not bound by art. III, 'State courts remain free to define their own jurisdictional limits even when adjudicating Federal claims.'") (quoting *LaChance v. Commissioner of Correction*, 475 Mass. 757, 771 n.14 (2016)); *see also* ECF No. 1 (Notice of Removal). If the Court should find that there is a lack of Article III standing, the case should be remanded rather than dismissed. *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989) ("[L]ack of standing is a jurisdictional defect, and the proper course is remand under § 1447(c), not dismissal.") (cleaned up). Thus, Plaintiff assumes that Defendant concedes Article III standing.

### 2. Plaintiff Properly Alleges "Aggrievement" Under the Statute

Defendant maintains that Plaintiff did not take a lie detector test (MTD at 8) and chooses to ignore the issue of whether a job applicant like Plaintiff, who suffered both a Testing and Notice Violation, has statutory standing. This is because, as Judge Saris found last year in a case concerning the use of similar lie detector software, "[e]ven under an expansive interpretation of *TransUnion*, [Plaintiff] has pleaded a concrete informational injury." *Baker v. CVS Health Corporation*, 717 F. Supp. 3d 188, 192 (D. Mass. 2024) (Saris, J.). Plaintiff "has plausibly alleged that as a downstream consequence of not receiving notice, he participated in a [lie detector test,]" (*id.*) an Amazon Workstyle Assessment. FAC ¶ 8. This "injury is of the kind the statute was designed to protect." *Baker,* 717 F. Supp. 3d at 192.

Assuming that Plaintiff only suffered a Notice Violation, Defendant contends he fails to allege a "substantial injury" related to its failure to provide notices about lie detector tests. That is incorrect. Plaintiff has standing because Mass. Gen. Laws ch. 149, § 19B(4) confers standing

on "[a]ny person aggrieved" by failing to receive the required notice. "[T]o determine whether a plaintiff has standing, [courts] look to the statute itself to determine whether the Legislature intended to confer standing to a person in the plaintiff's position." *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 833 (2024).

*Kenn* is particularly instructive in applying this analysis. In that case, plaintiff Kenn (a job applicant) alleged that defendant Eascare (an employer) "willfully provided a disclosure and authorization form that violated FCRA, injuring the plaintiff and those similarly situated" because it did not contain legally required notices. *See id.* at 644–45. The Appeals Court of Massachusetts recognized that the requirements for standing in Massachusetts are analyzed on a statute-by-statute basis. *See id.* at 650 (collecting citations).[3]

The Appeals Court held, "[u]nder the plain language of FCRA, the plaintiff alleged a legal injury for which Eascare is liable." *Kenn*, 103 Mass. App. Ct. at 651. The court specifically noted, "the FCRA liability provision recognizes that the injury to the consumer may not be measurable. Thus, in an action for a willful violation, … if the plaintiff cannot prove actual damages, [they can receive] nominal damages between one hundred dollars and $1,000." *Id.* Even more on point, the Appeals Court held that "the plaintiff alleged the violation of her legal rights under FCRA, which, if proved, entitles her to damages under FCRA." *Id.* at 652. The Appeals Court also noted the plaintiff's injury was "not 'speculative, remote, and indirect' as a matter of State law." *Id.*

The Appeals Court distinguished cases where "the plaintiff's allegations plausibly suggest a particularized, nonspeculative violation of [the statute at issue]" from "cases holding that

---

[3] *See also Loc. 1445, United Food & Com. Workers Union v. Police Chief of Natick*, 29 Mass. App. Ct. 554, 558 (1990) ("When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter."); *Bos. Edison Co. v. Bos. Redevelopment Auth.*, 374 Mass. 37, 46 (1977) (issues "involve[ing] an area of law governed by a specific statute with a standing requirement, [are] governed by the standing requirements of the particular statute[.]").

plaintiffs' injuries are too speculative or remote to bestow standing under common law" because the latter "concern hypothetical future injuries premised on a certain set of facts occurring, that is, allegation[s] that an injury might have occurred if a series of events transpired." *Kenn*, 103 Mass. App. Ct. at 652 (quotation marks omitted) (collecting cases); *id.* at 652–53 ("Nor is the injury to the plaintiff 'indirect.' She received a noncompliant disclosure form[.] … [T]he plaintiff is not acting as a self-constituted private attorney general pursuing a purely vicarious claim.").

Further, the Appeals Court recognized the ability of the Massachusetts Legislature to grant a statutory right and permit persons to sue to vindicate that right, even if their harms may be difficult to quantify. *See id.* at 653 ([N]othing … suggests that our Legislature would not be permitted to create a statutory scheme providing compensation for plaintiffs whose legal rights are infringed, but who are not identifiably injured thereby, in order to deter such practices[.]").

All of the case law cited by Defendant in support of its statutory standing argument predates *Kenn*. *See* MTD at 7-9. And just like the *Kenn* plaintiff, Plaintiff applied for a position of employment with Defendant and was deprived of a statutorily required notice, thus suffering the infringement of his legal right. FAC ¶ 8. Like the FCRA, the Statute at issue recognizes that the injury may not be easily quantified and accordingly makes statutory damages available. *See* Mass. Gen. Laws ch. 149, § 19B(4) (for a "violation of subsection (2)[,]" the "awarded damages shall equal or exceed a minimum of five hundred dollars[.]"). And Plaintiff's injury is not speculative, remote, and indirect. Plaintiff is not acting as a self-constituted private attorney general pursuing a purely vicarious claim; he and other Class Members "were aggrieved because they were bona-fide applicants for jobs with Defendant, and Defendant deprived them of their statutorily guaranteed right to the notice provided for by Mass. Gen. Laws ch. 149, § 19B(2)(b)." FAC ¶ 18.

Keeping with *Kenn*, Massachusetts courts interpreting a wide variety of statutes have held

that statutory standing, including "aggrievement," merely requires an infringement of a legal right. *See, e.g.*, *Hamani v. Com., Off. of Pub. Safety & Sec., Dep't of Crim. Just. Info. Servs.*, 2014 WL 7506859, at *5 (Mass. Super. Dec. 11, 2014) (Applying Massachusetts Criminal Offender Record Information (CORI) Law and holding that "proving actual damages in these types of cases could prove difficult. … [So] Section 177 provides a method of enforcing the statute … regardless of whether the aggrieved person could prove actual damages."); *Lynch v. Signal Fin. Co. of Quincy*, 367 Mass. 503, 505–07 (1975) (Applying Massachusetts Truth-in-Lending Act (repealed)[4] and holding that "recovery is by the party aggrieved and … there is no requirement of actual harm, and no attempt to make the damages proportional to the harm.");  *Garcia v. Right at Home, Inc.*, 2016 WL 3144372, at *5 (Mass. Super. Jan. 19, 2016) (Applying Massachusetts Employer Record-Keeping Laws and holding that "defendants contend that the plaintiffs are not 'aggrieved' by virtue of not receiving accurate pay slips. An aggrieved person is broadly defined, however, to include anyone who has suffered some infringement of legal rights.") (citations omitted); *First Christian Church v. Brownell*, 332 Mass. 143, 146–47 (1955) (Applying Massachusetts Probate Law and holding that "[t]he crucial words for the purposes of these cases are 'person aggrieved.' … It is settled that to be a person aggrieved it must appear that he has some pecuniary interest, **some personal right**….affected by the decree.") (emphasis added) (cleaned up); *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1193 (Mass. 2024) ("[T]he wiretap act provides a private cause of action to '[a]ny aggrieved person[.]' … The act further provides for statutory damages, regardless of whether the aggrieved person suffered any actual damages. … Th[e] alleged violation of the act falls within the area of concern of the statute[.] … Thus, [plaintiff] has established standing[.]") (cleaned up); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 31 (D. Mass.

---

[4] *See* Declaration of Julian Diamond ("Diamond Decl."), **Exhibit A**.

2024) ("[T]he VPPA does not condition recovery on proof of actual damages.") (citations omitted).

### 3. The Legislature Drafted the Statute to Confer Standing on Individuals Whose Statutory Rights Were Violated

The Massachusetts Legislature clearly intended to confer standing to a person whose rights were violated under the Statute – whether under § 19B(2), § 19B(2)(b), or both. The Massachusetts General Court did not in any way limit the remedies prong in § 19B(4) of the Lie Detector Statute. As has already been held by Judge Saris, the "Statute authorizes suit by '[a]ny person aggrieved by a violation of subsection (2),' **which includes the notice requirement**." *Baker*, 717 F.Supp.3d at 193 (citing Mass. Gen. Laws ch. 149, § 19B(4); Mass. Gen. Laws ch. 149, § 19B(2)(b)) (emphasis added). The analysis should end here. "Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent." *Pyle v. Sch. Comm. of S. Hadley*, 423 Mass. 283, 285 (1996); *see also Baker*, 717 F.Supp.3d at 193 (noting that "the statutory language is unambiguous."). Regardless, several features of the Statute further evince the legislative intent.

*First*, Mass. Gen. Laws ch. 149, § 19B(2)(b) requires employers to provide applicants with notice of their rights, irrespective of whether they actually administer "lie detector test[s]" as described in § 19B(2). *See* Mass. Gen. Laws ch. 149, § 19B(2)(b) ("**All** applications for employment within the commonwealth shall contain the following notice which shall be in clearly legible print[.]") (emphasis added). This makes clear that the area of concern of the Statute is not exclusively employers' conditioning of employment on the taking of a lie detector test as Defendant posits. MTD at 8. Rather, the text of the Statute shows that the Massachusetts Legislature was concerned by conduct violative of **both** § 19B(2) and § 19B(2)(b). *See, e.g.*, *Hoffman v. Howmedica, Inc.*, 373 Mass. 32, 37 (Mass. 1977) ("the statutory language itself is the principal source of insight into the legislative purpose.") (citation omitted).

*Second*, Defendant ignores the history of the Statute. *See Massachusetts State Auto.*

*Dealers Ass'n, Inc. v. Tesla Motors MA, Inc.*, 469 Mass. 675, 684 n.14 (Mass. 2014) ("we find the intended area of concern, and hence the interests that the Massachusetts Legislature intended to protect, based on consideration not only of the language of a statute, but also on an examination of its history[.]"). The Statute has been amended three times since its enactment in 1959. The notice requirement was not added until 1985. *See* Diamond Decl., **Exhibit B** (1959 Mass. Acts Chapter 255), **Exhibit C** (1963 Mass. Acts Chapter 797), **Exhibit D** (1973 Mass. Acts Chapter 620), **Exhibit E** (1985 Mass. Acts Chapter 587 – the present-day Statute). "It is strong proof of a legislative purpose to change the pre-existing law of the commonwealth." *Union Trust Co. v. McGinty*, 212 Mass. 205, 208 (1912).[5] The fact that the Massachusetts General Court deliberately added Mass. Gen. Laws ch. 149, § 19B(2)(b)'s notice requirement to a 26-year-old law is itself proof that § 19B(2)(b) addresses an area of substantial concern to the Massachusetts Legislature. The very addition of § 19B(2)(b) to the Statue makes clear its importance.

*Third*, the Statute makes statutory damages available to plaintiffs alleging violations of § 19B(2)(b). *See* Mass. Gen. Laws ch. 149, § 19B(4) ("awarded damages shall equal or exceed a minimum of five hundred dollars[.]"). Thus, the "Legislature … create[d] a statutory scheme providing compensation for plaintiffs whose legal rights are infringed, but who are not identifiably injured thereby, in order to deter such practices[.]" *Kenn*, 103 Mass. App. Ct. at 653.

*Fourth*, the drafting history of the Statute demonstrates that the Massachusetts Legislature specifically debated between providing a private right of action to persons "aggrieved" versus persons "injured" by violations, and intentionally implemented the former in conjunction with the

---

[5] *See also Com. v. Chamberlin,* 473 Mass. 653, 662 (2016) ("[A]mendments typically presume a change in the law.") (cleaned up); *Charles C. v. Com.*, 415 Mass. 58, 67 n.5 (1993) ("An amendment to a statute may properly be considered when determining legislative intent") (cleaned up); *Plumb v. Casey*, 469 Mass. 593, 598 (2014) ("[w]hen amending a statute… the Legislature is presumed to be aware of prior statutory language.") (cleaned up)

§ 19B(2)(b) notice violation.[6]  This change counsels in favor of reading the Statute as not requiring a separate injury-in-fact.  *See, e.g.*, *Furtado v. Plymouth*, 451 Mass. 529, 537 n.14, (2008) (the "decision of the Legislature to adopt one form of a proposed bill and not another may highlight the intended meaning of the adopted language"); *Commonwealth v. Harris*, 443 Mass. 714, 736 (2005) (Marshall, C.J., concurring in part and dissenting in part) ("The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal.") (cleaned up).

*Fifth*, had the Massachusetts Legislature wished to provide a civil remedy only to those "required or [] asked to take a lie detector test" (MTD at 8), it would have drafted the statute differently to expressly limit the term "aggrieved," as it has regularly done:

- **Mass. Gen. Laws Ann. ch. 12, § 11I – Massachusetts Civil Rights Act,** titled "Violations of constitutional rights; civil actions by **aggrieved** persons; costs and fees" (emphasis added)
  - "Any person … described in section 11H[] may institute and prosecute in his own name and on his own behalf a civil action[.]"; *see also* Mass. Gen. Laws Ann. ch. 12, § 11H(a)(1) (describing persons facing "threats, intimidation or coercion, or attempt[s] to interfere by threats, intimidation or coercion, with the exercise or enjoyment … of rights[.]").
- **Mass. Gen. Laws Ann. ch. 31, § 2(b) – Massachusetts Civil Service Law**
  - "No person shall be deemed to be aggrieved … unless such person has made specific allegations … that a decision, action, or failure to act … was in violation of this chapter[] … and said allegations shall show that such person's rights were abridged, denied, or prejudiced in such a manner as to cause actual harm to the person's employment status."
- **Mass. Gen. Laws Ann. ch. 91, § 18 – Massachusetts Public Waterfront Act**
  - "Any person aggrieved by a decision by the department … shall have the right to an adjudicatory hearing[.]"; *see also* 310 Mass. Code Regs. 9.02

---

[6] The Statute, as enacted, includes two types of violations – § 19B(2) ("testing" violations) and § 19B(2)(b) ("notice" violations) – and § 19B(4) affords a private right of action to persons "aggrieved" by either.  *See infra*.  Earlier drafts of the Statute included only the former, "testing" violation and afforded a private right of action only to persons "injured."  *See* Diamond Decl., **Exhibit F** (HB 1123) (including no "notice" violation and reading: "Any person discharged or discriminated against for the assertion of rights arising hereunder or otherwise injured as a result of any violation of this section may seek injunctive relief including reinstatement with full rights and benefits and shall be compensated by his employer or prospective employer; Diamond Decl., **Exhibit G** (HB 5408) (including no "notice" violation and reading: "In addition to the remedies otherwise provided by law, any person **injured** by a violation of this section may bring a civil action to recover any and all damages recoverage at law[.]").

("Aggrieved Person means any person who, because of a decision by the Department … may suffer an injury in fact[.]"); *Higgins v. Dep't of Env't Prot.*, 64 Mass. App. Ct. 754, 757 (2005) ("[S]tanding depends on whether they are persons aggrieved as defined in 310 Code Mass. Regs. §§ 9.02 and 9.17(1)(b), quoted above.").

- **Mass. Gen. Laws Ann. ch. 160, § 81 – Massachusetts Railroads Law**
  o "An owner of land aggrieved by the location of a railroad crossing his land in such manner as to be of grievous damage, which could be avoided without serious injury to others, may … petition the department[.]"

### 4. Defendant Relies on Case Law for Non-Analogous Statutes

Defendant does not deny that Plaintiff's legal right under Mass. Gen. Laws ch. 149, § 19B(2)(b) was infringed.  Instead, the MTD relies on cases evaluating standing under non-analogous statutes: Mass. Gen Laws. Ch. 30A, § 14 (Massachusetts Administrative Procedures Act); Mass. Gen. Laws. Ch 40A, § 17 (Massachusetts Zoning Act); Mass. Gen. Laws. Ch 111B, § 150A (Massachusetts Solid Waste Landfill Regulatory Act); Mass. Gen. Laws. Ch 151B, §§ 5 and 9 (Massachusetts Fair Employment Practices Law, prohibiting employment discrimination); Mass. Gen. Laws. Ch 175, § 206D (Massachusetts Insurance Holding Company System Regulatory Act); and St. 1960, Mass. Gen. Laws. Ch 652, § 13 (Boston Redevelopment Authority Act).  *See* MTD at 7-9.  These cases are not on point because, as stated *supra*, the requirements for standing in Massachusetts are analyzed on a statute-by-statute basis.  *Loc. 1445*, 29 Mass. App. Ct. at 558.

The MTD's citation to cases concerning the Administrative Procedures Act, Zoning Act, Solid Waste Landfill Regulatory Act, Insurance Holding Company System Regulatory Act, and Boston Redevelopment Authority Act are reflective of the reality that in Massachusetts, like most states, standing doctrine has largely developed in contexts other than consumer and worker protection statutes – specifically, "public rights" suits against state or local governmental entities by residents, taxpayers, voters, or others.  *See, US Bank v. Nelson*, 36 N.Y.3d 998, 1003–06 (N.Y. 2020) (Wilson, J., concurring) (describing history of modern standing rulings).  To the extent that such "public rights" cases tend to require an injury-in-fact to establish standing, that is because

those cases, unlike this one, directly implicate the principle of the separation of powers.  "By insisting that the parties who seek [Massachusetts courts'] assistance have standing, that is that a personal interest [be] directly affected, … [the courts] respect both principles: no citizen whose rights have been infringed is left without a remedy; yet [the courts] do not intrude into the business of a coequal branch in the course of a controversy that is to any degree remote or abstract."  *All. AFSCME/SEIU, AFL-CIO v. Com.*, 427 Mass. 546, 549 (1998); *see also Goldman v. Sec'y of Exec. Off. of Health & Hum. Servs.*, 101 Mass. App. Ct. 427, 438, *review denied*, 490 Mass. 1108 (2022) (concluding otherwise "would cast the courts in the role of deciding generalized grievances[ regarding] … agency action[.]").  The instant matter does not concern a "generalized grievance" about agency action, let alone agency action at all.

Defendant's cases involving Mass. Gen. Laws ch. 151B, §§ 5 and 9, meanwhile, relate to employment discrimination.  In that context, it would likewise make sense for standing to require an additional injury[7] because the "central focus" of ch. 151B is whether a bad actor "penalizes" a victim "because of their race, color, religion, sex, or national origin."  *Harvard*, 413 Mass. at 69.  To "penalize" means to inflict a penalty[8] – a "disadvantage, loss, or hardship due to some action[.]"[9]  That is synonymous with an "injury" as Defendant would have it defined here – "hurt, damage, or loss[.]"[10]  In contrast, the Statue at issue here does not require a "penalty" be suffered.

On top of this, the cases cited by the MTD at 7-9 involved either (1) suits where the plaintiff was not within the class of individuals protected by the statute at issue or (2) purely speculative

---

[7] *See, e.g.*, *Harvard L. Sch. Coal. for C.R. v. President & Fellows of Harvard Coll.*, 413 Mass. 66, 69 (1992) ("that an individual has to be within the employment relationship and has to have suffered injury as a result of a prohibited practice").

[8] Merriam-Webster, *Penalize*, https://www.merriam-webster.com/dictionary/penalize.

[9] Merriam-Webster, *Penalty*, https://www.merriam-webster.com/dictionary/penalty.

[10] Merriam-Webster, *Injury*, https://www.merriam-webster.com/dictionary/injury.

injuries.[11]  Again, Plaintiff's injury here is not speculative, remote, and indirect.  Plaintiff and other

Class Members "were aggrieved because they were bona-fide applicants for jobs[.]"  FAC ¶ 18.

And their rights were directly violated by Defendant's failure to give statutorily required notice.

*Id.* ¶ 8.[12]

### 5.    *Auguste* **is Unpersuasive in Light of** *Kenn*

Defendant again refers the Court to *Auguste*.  As shown by Exhibit 1 to the MTD, in about

two pages, *Auguste* cursorily discusses § 19B(2)(b).  Of this, only the final paragraphs analyze

standing as a "person aggrieved" – the rest covers the extent of § 19B(4)'s private right of action

(discussed *infra*).  However, "the jurisdictional question of whether a plaintiff has standing is

separate and distinct from whether they have stated a viable claim. … Whether a complaint states

a cognizable cause of action goes to the ultimate merits of the claim[;] … [whether] the plaintiff

is entitled to relief. … In contrast, a challenge to standing, like all questions of subject matter

jurisdiction, goes to the power of the court to hear and decide the matter."  *Bassett v. Triton Techs.,*

*Inc.*, 2017 WL 1900222, at *1 (Mass. Super. Mar. 6, 2017) (cleaned up).

*Auguste*'s consideration of the instant issue is sparse, essentially boiling down to:

---

[11] *See, e.g.*, *Ginther v. Comm'r of Ins.*, 427 Mass. 319, 323 (1998) ("The plaintiffs have not alleged facts that place them within the area of concern of the statute."); *Harvard*, 413 Mass. 66, 68–70 (1992) ("[A]n individual has to be within the employment relationship and has to have suffered injury as a result of a prohibited practice in order to have a cause of action under § 9. … The plaintiffs were neither [.]"); *Bd. of Health of Sturbridge v. Bd. of Health of Southbridge*, 461 Mass. 548, 559–60 (2012) ("[T]here is….therefore, no indication as to what direct or specific impact the proposed modification of the landfill may have on any of them."); *Kenner v. Zoning Bd. of Appeals of Chatham*, 459 Mass. 115, 120–21 (2011) ("[W]here a municipality's zoning bylaw specifically provides that the zoning board of appeals should take into consideration the visual impact of a proposed structure, this defined protected interest may impart standing to a person whose impaired interest falls within that definition. … [But] the Kenners did not put forth credible facts to support their allegation[.]") (cleaned up).

[12] Defendant also argues, "[a]t the time Plaintiff allegedly completed the Amazon applications, he … knew his rights[.]"  MTD at 8-9.  Not so.  Plaintiff first contacted his counsel regarding the *Staples* matter on August 24, 2024, at 4:08 PM ET.  Diamond Decl. ¶ 12.  Plaintiff completed his Amazon applications on August 24, 2024, between approximately 1:43 PM ET and 1:47 PM ET. *Id.*  Plaintiff's multiple filings are reflective of the fact that individuals searching for employment tend to apply for multiple jobs.

> Th[e Court's] interpretation is supported by the practical consequences of
> a contrary holding. … Plaintiff's interpretation would mean that every
> employer who offered employment to any person, and asked the applicant
> to fill out a form would be liable to the applicant for $500, if the form
> lacked the necessary legend[.]

*Auguste*, at *14-15.  In so holding, *Auguste* imposes Article III standing's requirement of a separate

injury-in-fact.  This analysis has since been rejected in the Appeals Court's comprehensive

analysis in *Kenn*.  *Kenn*, like the instant case, concerned an employer that "depriv[ed the plaintiff]

of a clear recitation of her rights[.]"  *Kenn*, 103 Mass. App. Ct. at 645 (cleaned up). *Kenn*

considered how, "[b]ecause they are not bound by art. III, State courts remain free to define their

own jurisdictional limits[.]"  *Id.* at 649 (cleaned up).  And *Kenn* held that, "the plaintiff is not

required to allege that the violation of her legal rights … caused her some kind of separate,

identifiable harm[.] … [N]othing … suggests that our Legislature would not be permitted to create

a statutory scheme providing compensation for plaintiffs whose legal rights are infringed, but who

are not identifiably injured thereby, in order to deter such practices[.]"  *Id.* at 653 (cleaned up).

As the only other court Plaintiff is aware of to examine Mass. Gen. Laws ch. 149, §

19B(2)(b) succinctly put it: "There's clearly statutory standing[.]"  *See Baker v. CVS Health

Corporation*, No. 1:23-cv-11483-PBS (D. Mass.) October 30, 2023 Hearing Tr. at 9:18-19.[13]

### 6. Plaintiff's Interpretation Promotes Compliance

Grasping at straws, Defendant argues that Plaintiff's counsel has "open[ed] the floodgates"

with cases filed pursuant to the Statute and that "even more copycats will inevitably follow in short

order."  MTD at 10.  Defendant's slippery slope is speculative and spurious.  The cases filed can

hardly be said to have "open[ed] the floodgates" against what are essentially Massachusetts'

largest employers.  These companies, like all others doing business in the Commonwealth, are

---

[13] Diamond Decl., **Exhibit H**.

obligated to follow her laws. "Massachusetts has a strong interest in ensuring that those who purposefully transact business in Massachusetts comply with Massachusetts law." *Hongyu Luo v. Tao Ceramics Corp.*, 2014 WL 3048679, at *4 (Mass. Super. Apr. 10, 2014).

Accordingly, the bulk of employers, acting with prudence and due regard for the law, comply with the Statute. This pattern of compliance has only seemed to accelerate since Plaintiff's counsel filed suit, effectively putting businesses on notice of their legal obligation, which is easily satisfied with the addition of two sentences to Massachusetts job applications. And perhaps unsurprisingly, as adherence has grown, lawsuits have faded. *See* MTD at 2 n.1 (showing Plaintiff's counsel filed 90% of cases seeking to enforce the Statute before June 2025). Despite this trend, despite the fact that compliance is simple, and despite the fact that the Statute has been litigated for years (*see Baker v. CVS Health Corporation*, 2384CV00993, Dkt. 1 (dated April 28, 2023)), Amazon – one of the highest-valued, most sophisticated companies in the world – failed to follow the law until approximately February 2025. FAC ¶ 2 n.1. For an entity like Amazon, which was apparently slow to adjust its job applications to respect its job applicants' rights and comply with the Commonwealth's laws, "damages [can serve] to deter callous and intentional violations of the law, and to promote prelitigation settlements[.]" *Kuong v. Wong*, 2013 WL 6579800, at *6 (Mass. Super. June 13, 2013).[14]

## C. The Statute Provides A Private Right of Action For Violations of Subsection (2), Which Includes Paragraph (b)

Defendant asserts that "subsection (4), by referring to 'a violation of subsection (2)' …

---

[14] Even when it is not possible to allege a Testing Violation, this does not mean that Mass. Gen. Laws ch. 149, § 19B(2)(b) should not be enforced. That is especially true today, when hiring decisions are increasingly delegated to abstruse artificial intelligence-powered software systems. Noncompliance with Mass. Gen. Laws ch. 149, § 19B(2) is thus not always easily brought to light. *See, e.g.*, https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/2021/06/Hinkle-The_Modern_Law_Detector.pdf.

[refers] only to 'a violation of subsection (2)' itself, and not subsection (2)(b)." MTD at 12. That is wrong. Paragraph (b) is a paragraph of "subsection (2)," not a separate "subsection (2)(b)."

The MTD at 10-12 and *Auguste* at *13-14 rely on the slightly different language in Mass. Gen. Laws ch. 149, § 19B(3) and 19B(4) for the proposition that (2) and (2)(b) should be treated distinctly. This argument was discussed at length by defendant CVS in the *Baker v. CVS* Motion to Dismiss the First Amended Complaint. As Judge Saris held, this argument is not persuasive:

> Statutory interpretation starts with the plain language of the statute. **Here, the Lie Detector Statute authorizes suit by "[a]ny person aggrieved by a violation of subsection (2)," which includes the notice requirement.** CVS's appeals to the Lie Detector Statute's legislative history are unavailing because the statutory language is unambiguous.

*Baker*, 717 F. Supp. 3d at 192–93 (emphasis added).[15] Here, the language is unambiguous because Plaintiff alleges violations of "Paragraph (b) of subsection two." Diamond Decl., **Exhibit E** (1985 Mass. Acts Chapter 587). By definition, a violation of (2)(b) is "a violation of subsection (2)[.]" *See* Mass. Gen. Laws ch. 149, § 19B(4).

This is confirmed by, *inter alia*, the Massachusetts Acts and Resolves – which "'are chronological compilations of laws passed by the Massachusetts General Court within a particular legislative session[] . . . [and] provide the exact text of the law passed by the legislature[.]'" Diamond Decl., **Exhibit I** (Mass.gov "Guide to Compiling a Massachusetts Legislative History"). 1985 Mass. Acts Chapter 587 (Mass. Gen. Laws ch. 149, § 19B's implementing Act) – which was signed by the Governor on December 16, 1985 – makes it crystal clear that paragraph (b)'s notice requirement is part of subsection (2), reading: "**Paragraph (b) of subsection two** of section nineteen B of chapter one hundred and forty-nine of the General Laws, as appearing in section one

---

[15] *See also Pyle*, 423 Mass. at 285 ("Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent.")

of this act, shall take effect on September thirtieth, nineteen hundred and eighty-six." Diamond

Decl., **Exhibit E** (emphasis added).  The Massachusetts Legislature did not set forth "(b)" as

"subsection three."  It made (b) a paragraph of, and thus a part of, subsection two.  A violation of

(b) is clearly "a violation of subsection (2)[.]"  Mass. Gen. Laws ch. 149, § 19B(4).

The Massachusetts General Court's "Legislative Research and Drafting Manual" (the

"Manual") provides further clarification.  Diamond Decl., **Exhibit J**.  The Manual states, "'[a]ll

laws are organized by chapters and then sections of those chapters. The sections may be further

broken down by subsections, clauses, paragraphs, subparagraphs, divisions, subdivisions and,

ultimately, sentences and words.'" *Id.* at 4.  The Manual includes an illustration of this:

> Section 1
> (a)- followed by (b),(c), etc.- normally referred to as subsections
> (1)- followed by (2),(3), etc.- normally referred to as paragraphs
> (i)- followed by (ii),(iii), etc.- normally referred to as clauses
> (A)- followed by (B),(C), etc.- normally referred to as subclauses

*Id.* at 5.  Per the Manual, Massachusetts statutory drafters "[d]esignate each subsection, paragraph,

subparagraph or clause by a letter **or** number[;]"[16] a number/letter-alternating "pattern [is] used in

the General Laws[.]" *Id*.  Thus, there is no such thing as a "subsection (2)(b)" (MTD at 12) in

Massachusetts.  Subsections are not designated by number/letter or letter/number **combinations**.

Put succinctly, the Massachusetts General Court established a "numbered" subsection – subsection

(2).  Then, it proceeded to the next step in the pattern, establishing a "lettered" paragraph –

paragraph (b).  Accordingly, § 19B(4)'s "any person aggrieved by a violation of subsection (2)"

language clearly describes a person in Plaintiffs' position: a job applicant who has suffered the

infringement of their legal right to the notice required under Mass. Gen. Laws ch. 149, § 19B(2)(b).

It is therefore impossible for the words "subsection (2)" in § 19B(4) be "narrower" than

---

[16] *Id.* (emphasis added).

the words "any provision" in § 19B(3).  *See* MTD at 11.  The words "subsection (2)" encompass **all** violable provisions.  And the word "any" does not equate to "both" (MTD at 12) or "more."  In fact, an earlier draft of the Statute described *supra* – HB 1123 – used the words "**any** violation of a provision of this section" (emphasis added) even though HB 1123 did not include "both" or "more" types of violations (testing and notice).[17]  Thus, Mass. Gen. Laws ch. 149, § 19B(4) is clear: the Massachusetts Legislature intended to confer a private right of action to persons whose rights were violated – whether under § 19B(2), § 19B(2)(b), or both.

Defendant mistakenly relies on alleged distinctions between SB 1435's and HB 6908's government enforcement language, as well as HB 6908's "Subsection 1(b) of section 19B" and 1985 Mass. Acts Chapter 587's "Paragraph (b) of subsection two."  But these are non-sequiturs that were rejected by Judge Saris in *Baker*.  *See Baker*, October 30, 2023 Hearing Tr. at 4:6-8 ("[The Statute] says, 'Any person aggrieved by violation of Subsection 2,' and Subsection 2 includes two paragraphs, (a) and (b)."); *see also id.* at 3:24-5:17.

Finally, Defendant attempts to argue that (2)(b) only imposes a general obligation that is not enforceable by private individuals through subsection (4)'s private right of action.  MTD at 15. But this does not make sense.  There is no need for (2)(b) to define whom it protects because it is self-evident: persons completing "applications for employment within the commonwealth" (i.e., job applicants).  Mass. Gen. Laws ch. 149, § 19B(2)(b).

## III.    CONCLUSION

For the foregoing reasons, Defendant's MTD should be denied in its entirety.

---

[17] Diamond Decl., **Exhibit F**.

Dated: August 18, 2025                  Respectfully submitted,

                                        **BIRNBAUM & GODKIN, LLP**

                                        By: */s/ David S. Godkin*_____
                                              David S. Godkin

                                        David S. Godkin (BBO#196530)
                                        James E. Kruzer (BBO#670827)
                                        1 Marina Park Drive, Suite 1410
                                        Boston, MA 02210
                                        Telephone: (617) 307-6100
                                        Email: godkin@birnbaumgodkin.com
                                              kruzer@birnbaumgodkin.com

                                        **BURSOR & FISHER, P.A.**
                                        Joseph I. Marchese**
                                        Matthew A. Girardi*
                                        Julian C. Diamond*
                                        1330 Avenue of the Americas, 32nd Floor
                                        New York, NY 10019
                                        Telephone: (646) 837-7150
                                        Facsimile: (212) 989-9163
                                        Email: jmarchese@bursor.com
                                              mgirardi@bursor.com
                                              jdiamond@bursor.com

                                        *Attorneys for Plaintiff*

                                        **Pro Hac Vice*
                                        ***Pro Hac Vice application forthcoming*

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, a copy of the foregoing was filed via the ECF filing

system and served by email on Defendant's counsel as follows:

**MORGAN, LEWIS & BOCKIUS LLP**
Stephen P. Hall (BBO #679583)
Anna K. Perocchi (BBO #714730)
One Federal Street Boston, MA 02110 Telephone: (617) 341-7700
Facsimile: (617) 341-7701
Email: stephen.hall@morganlewis.com
anna.perocchi@morganlewis.com

*Attorneys for Defendant Amazon.com, Inc.*