UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
JUSTIN KORN, individually and on )
behalf of himself and all others )
similarly situated,            )
                               )
               Plaintiff,      )
                               )
     v.                        )    CIVIL ACTION
                               )    No. 25-10802-WGY
AMAZON.COM,INC.,               )
                               )
               Defendant.      )
_____)
```

YOUNG, D.J.                                    February 18, 2026

**MEMORANDUM AND ORDER**

The Commonwealth of Massachusetts generally prohibits the use of lie detector tests as part of an application for employment.  See generally MASS. GEN. LAWS ch. 149, § 19B ("the Lie Detector Statute" or "Section 19B").  The Lie Detector Statute also requires written notice to potential employees concerning the use of such tests.  Id. § 19B(2) ("the Notice Provision").

In this removed action, the Plaintiff, Justin Korn ("Korn"), brings a putative class action against Amazon.com, Inc. ("Amazon"), claiming damages for Amazon's failure to comply with the Notice Provision as part of its application process and administering a lie detector test.  Amazon moves to dismiss the

complaint, arguing: (1) Korn was not administered a lie detector test; (2) Korn is not a "person aggrieved" under the statute; and (3) Section 19B does not permit a private cause of action under the Notice Provision. For the reasons stated below, the motion to dismiss, ECF No. 21, is hereby DENIED.

## I. INTRODUCTION

### A. Procedural History

This putative class action was removed to this Court on April 3, 2025. Notice of Removal, ECF No. 1. Korn filed an amended complaint on June 23, 2025. First Am. Class Action Compl. ("FAC"), ECF No. 17. On July 21, 2025, Amazon filed a motion to dismiss the FAC, which is fully briefed. Def.'s Mot. Dismiss Pl.'s FAC, ECF No. 21; Mem. Supp. Def's. Mot. Dismiss FAC ("Amazon's Mem."), ECF No. 22; Mem. Opp'n Def.'s Mot. Dismiss FAC ("Korn's Opp'n"), ECF No. 28; Decl. Julian Diamond Supp. Opp'n Mot. Dismiss FAC, ECF No. 29; Reply Mem. Supp. Def.'s Mot. Dismiss FAC ("Reply"), ECF No. 31. Amazon has filed supplemental authority. See ECF Nos. 40, 50, and 53.

### B. Facts Alleged

In the summer of 2024, Korn applied for three positions with Amazon. FAC ¶ 8. Korn was not provided a notice of his rights concerning lie detector tests under Section 19B, and he was required to take a "Workstyle Assessment" that he

[2]

characterizes as a lie detector test under Section 19B. Id. ¶¶ 8, 13-15, 20.

The Workstyle Assessment is alleged to fall within the definition of a lie detector. Id. ¶ 20. Amazon tells its applicants that the "Workstyle Assessment is an Amazon-custom assessment derived from [Amazon's] Leadership Principles. Its purpose is to guide hiring of people who are engaged, positive, and have a sense of ownership over their work and events that happen to them." Id. ¶ 21 (footnote omitted). It "ask[s job applicants] to choose the extent to which a statement represents [their] work style." Id. (footnote omitted).

> Amazon also tells applicants:
>
> We want to ensure that the assessment experience is fair for everyone so, for test security purposes, Amazon uses mechanisms to detect suspicious test behavior and responses. If suspicious behavior is detected (e.g., attempts to plagiarize, fabricate, or use outside assistance), it will impact your current and possibly future Amazon applications. Possible responses include invalidating your assessment, requiring additional assessments, ineligibility for the current or future roles, and/or legal action.

Id. ¶ 22 (emphasis omitted). A list of questions is included in the amended complaint:

> - Most projects need a structured plan. / I like planning, but often address problems as they come.
> - I often choose predictability over the unknown. / I adapt to change quickly.
> - I'm about as reliable as everyone else on my team. / I persist until a task is done.

[3]

- My team relies on me to check for mistakes. / I'll occasionally make easy-to-fix mistakes.
- I prefer to focus on the task at hand rather than how others feel about it. / I consider others' feelings even when it's not necessary.
- I reflect on disappointments as much as others. / I don't dwell on my mistakes.
- I rarely miss deadlines. / It makes me feel good when a plan works out.
- I usually take time to find out how others are feeling. / Double-checking my work is built into my process.
- I put failures behind me quickly. / I'm always looking for new ways to do things.
- I'm known for getting work done. / A plan increases efficiency.
- I don't think much about other people's feelings. / Rechecking your work is a usually waste of time.
- It's easy to bounce back from failure. / I'm energized by change.
- I can always be trusted to fulfill my obligations. / I usually make careful plans to avoid problems.
- I take a personal interest in others' feelings. / I usually double-check my work.
- Constant change is exhausting. / I sometimes focus too much on past mistakes.
- I would never miss a deadline without a good reason. / Making a detailed plan jumpstarts my momentum.
- I take time to better understand my coworkers. / People should take more time reviewing their work.
- I'm often the first to try new things. / I focus more on future possibilities than past problems.
- I always plan and prioritize my work tasks. / Meeting commitments is a top priority.
- I sometimes notice if things are missing. / I can sense when others are upset.
- I like surprises. / Usually I don't dwell on the past.
- Typically, I am disciplined about getting work done. / I usually create a plan before starting my work.
- Checking your work is important. / It's important to understand people's emotions in order to help.
- I sometimes have a hard time putting failure behind me. / Frequent changes are usually disruptive.
- I do my best, even on trivial tasks. / I produce my best work when working from a detailed plan.
- It's easy for me to recognize others' feelings. / Getting the details right is critical to making a point.

[4]

- Setbacks are hard to manage. / New situations are uncomfortable.
- I'm quick to list the steps to achieve a goal. / I follow through on my obligations.
- I spot errors that others overlook. / I make an effort to ask people how they are doing.
- I'm confident that I can handle any challenge. / I adjust quickly to new settings.
- I persist through challenging tasks. / A good plan makes any project go smoothly.
- I check my work for quality on highly visible projects. / I cheer up my coworkers when they feel down.
- I occasionally like to try new approaches. / I recover from setbacks about as quickly as others.
- I always prefer working from a plan. / I usually can be counted on to get the job done.
- I sometimes check information I receive. / I try to understand other people's feelings and emotions.
- Setbacks usually don't impact my effort. / Changing my routine inspires me.

Id. ¶ 24.  Korn claims that, "Amazon states that it 'use[s] online assessments as one way to help us get to know [job applicants] better, and we design them to measure key characteristics required for success in a role. . . . [W]ork style assessments . . . are centered around our peculiar culture and Leadership Principles[.] [. . .] We want to get to know the authentic you[.]'  In line with this, Amazon's Leadership Principles provide, inter alia, that: 'Leaders . . . work vigorously to earn and keep customer trust[;]' and 'Earn Trust[.] [. . .] Leaders . . . speak candidly[.]'" Id. ¶ 25 (footnote omitted).

On these same allegations, and additional class action allegations, Korn seeks to bring a class action for those who

[5]

applied for a Massachusetts-based position, and a subclass for those who completed the assessment. Id. ¶¶ 27-33. The first amended complaint seeks declaratory, compensatory, and injunctive relief and counts for unlawfully administering a lie detector test and the failure to advise Korń of his rights under Massachusetts law. See count I (Declaratory and Injunctive Relief), id. ¶¶ 34-37; count II (Violation of MASS. GEN. LAWS ch. 149, § 19B(2) (administered lie detector)), id. ¶¶ 38-45; count III (Violation of MASS. GEN. LAWS ch. 149 § 19B(2)(b) (Notice Violation)), id. ¶¶ 46-50.

## II. ANALYSIS

### A. The Standard of Review

"To assess whether a complaint can withstand a Rule 12(b)(6) motion, [the court] 'must accept as true all well-pleaded facts indulging all reasonable inferences in [the moving party's] favor.'" Lavigne v. Great Salt Bay Cmty. Sch. Bd., 146 F.4th 115, 123 (1st Cir. 2025) (quoting Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (citation omitted)). This liberal "pleading standard 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

B.  **The Lie Detector Statute**

The Court starts with the Lie Detector Statute, which provides in relevant parts:

Lie detector tests; use as condition of employment; penalty; civil action

> (1) As used in this section the **term "lie detector test" shall mean any test utilizing a polygraph or any other device, mechanism, instrument or written examination, which is operated, or the results of which are used or interpreted by an examiner for the purpose of purporting to assist in or enable the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual.**
>
> (2) It **shall be unlawful for any employer** or his agent, with respect to any of his employees, **or any person applying to him for employment,** including any person applying for employment as a police officer, **to subject such person to, or request such person to take a lie detector test within or without the commonwealth, or to discharge, not hire, demote or otherwise discriminate against such person for the assertion of rights arising hereunder.** This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations.
>
> . . .
>
> **(b) All applications for employment within the commonwealth shall contain the following notice which shall be in clearly legible print:
> "It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability."**
>
> . . .
>
> (4) **Any person aggrieved by a violation of subsection (2) may institute within three years of such violation and**

[7]

> **prosecute in his own name and on his own behalf, or for himself and for other similarly situated, a civil action for injunctive relief and any damages thereby incurred, including treble damages for any loss of wages or other benefits.** The total awarded damages shall equal or exceed a minimum of five hundred dollars for each such violation. A person so aggrieved and who prevails in such action shall be entitled to an award of the costs of the litigation and reasonable attorney fees.

MASS. GEN. LAWS ch. 149 § 19B (emphasis added).

### C. **Korn Has Plausibly Pleaded that he was Administered a Lie Detector Test under Section 19B**

Though Amazon attempts to minimize its software's purpose, Korn has pleaded sufficient facts at the motion to dismiss stage to fall within the definition of a lie detector test. Under Section 19B(1):

> …the term "lie detector test" shall mean **any test** utilizing a polygraph **or any other** device, mechanism, **instrument or written examination**, which is operated, **or the results of which are used or interpreted by an examiner** for the **purpose of purporting to assist in or enable the detection of deception,** the **verification of truthfulness,** or the rendering of a **diagnostic opinion** regarding **the honesty of an individual.**

Id. § 19B(1)(emphasis added).

Amazon claims that: (1) the software is not for the purpose of detecting deception, verifying truthfulness, or rendering an opinion as to a person's honesty; and (2) even if it could be considered a lie detector test, there is no allegation that Amazon actually used the assessment. Amazon Mem. at 4-7.

[8]

As to the first argument, Amazon claims that the software is a personality test, similar to the Minnesota Multiphasic Personality Inventory at issue in Auguste v. G4S Secure Solutions (USA), Inc., SUCV 14-3311-BLS1 (Mass. Sup. Ct. April 25, 2016) (Kaplan, J.), ECF 22-1. See Amazon's Mem. 7; Reply at 4.

In Auguste, a prospective security guard completed an online application with the defendant. Auguste, SUCV 14-3311-BLS1 at 2. After an interview, he was granted employment pending pre-employment screening. Id. Part of that screening as an armed position was a psychological examination provided by a third party. Id. at 3. Part of that evaluation was completion of a modified version of the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), along with an interview with a psychologist. Id. The application did not include a lie detector notice under Section 19B. Id. The plaintiff was cleared for the position and began working. Id.

As a procedural matter, as Korn points out, the Auguste decision relates to a motion for **summary judgment** -- a different legal standard, and made upon a factual record after discovery. See Korn's Opp'n. at 3. As to the substance, taking all inferences in favor of Korn, as this Court must, the first amended complaint provides a description of the Amazon Workstyle Assessment that plausibly pleads it is a lie detector test, not

[9]

an MMPI-like tool. Id. at 2. In its reply, Amazon argues that "[w]hether in the MMPI or a workplace-oriented personality test, internal validation measures are not 'used . . . for the purpose of' detecting lies and thus do not satisfy § 19B(1)." Reply at 4. Again, the allegations are sufficient to fall within the broad definition of a lie detector test at least at the motion to dismiss stage, taking all reasonable inferences in favor of Korn.

As for the second argument, taking all inferences in favor of the plaintiff, the first amended complaint **does** in fact plausibly plead usage of the information. See Korn's Opp'n 5 (citing FAC ¶ 4); FAC ¶¶ 25-26. Cf. St. Cyr v. JPMorgan Chase Bank, N.A., No. CV 25-11751-BEM, 2025 WL 2977935, at *3 (D. Mass. Oct. 22, 2025) (Murphy, J.) (ruling allegations did not support inference that HireVue was a lie detector based upon allegations solely concerning HireVue's representations of possible uses by employers of the test itself).

The Court rules that Korn has plausibly pleaded that the Workstyle Assessment is a lie detector test and alleged usage of the information collected from the test under Section 19B.

### B. Korn Is a "Person Aggrieved" under the Lie Detector Statute

Korn has also pleaded plausibly facts supporting treating him as a "person aggrieved" under Section 19B(4). The Court

[10]

begins, as it must, with the statute. Specifically, Section 19B(4) provides that "[a]ny **person aggrieved** by a violation of subsection (2) may institute [. . .] a civil action . . . ." Mass. Gen. Laws ch. 149, § 19B(4) (emphasis added). Amazon argues that Korn lacks statutory standing, and that under Massachusetts law, to be a "person aggrieved" requires "substantial injury", citing Ginther v. Comm'r of Ins., 427 Mass. 319, 322 (1998); Harvard L. Sch. Coal. for C.R. v. President & Fellows of Harv. Coll., 413 Mass. 66, 69 (1992); Board of Health of Sturbridge v. Board of Health of Southbridge, 461 Mass. 548, 559 (2012); Boston Edison Co. v. Boston Redev. Auth., 374 Mass. 37, 46 (1977). Amazon's Mem. 7-8. While these cases do address "substantial injury," none interpret the statute at issue.

In the absence of binding First Circuit or Massachusetts authority, the Court looks to decisions from the Massachusetts Superior Court -- in particular here, the Business Litigation Session[1] of that court -- which has most recently consolidated a

---

[1] "The Business Litigation Session of the Superior Court (BLS) provides a forum for business and commercial disputes which, because of their complexity, will benefit from individualized and collaborative case management. The BLS consists of two full time sessions committed to the timely and efficient resolution of commercial disputes and other complex cases." See https://www.mass.gov/info-details/about-the-superior-court-business-litigation-session; see also, Charles Gallagher, 106 Mass. L. Rev. 16, 22 (2026) (reviewing the history and structure of the BLS, and describing it as "a specialized, efficient and sophisticated forum for resolving complex commercial disputes"). The Court views the BLS consolidation of

[11]

number of Notice Provision cases under Massachusetts law, and ruled that a plaintiff is not a "person aggrieved" **solely** on a notice violation because there is no injury. See Ababio v. Nike Retail Servs., Inc., Mass. Sup. Ct. No. 2584CV01134-BLS-1 (Nov. 25, 2025) (Barry-Smith, J.) (order on four consolidated cases on the Section 19B notice issue), ECF No. 40-2.[2]

The Ababio decision is well-reasoned and persuasive, comparing the statutory language at issue to other statutes, and concluding that plaintiffs in that case were not "persons aggrieved" because the alleged notice harm without more is at best "minimal or slightly appreciable," and "speculative." Id.

---

these matters as a concerted effort to provide a uniform analysis of Massachusetts law as it applies to these types of cases; cases that apparently flourish in the courts of the Commonwealth. See Amazon's Mem. 2, n.1 (collecting cases).

[2] As described in that case:

> By order dated April 30, 2025 (Krupp, J.), several cases in the BLS-1 session seeking to enforce § 19B's statutory notice provision were grouped together for consideration of common issues. Pursuant to that order, the parties in several cases consolidated their briefing with respect to the defendants' motion to dismiss based on standing. For those cases that did not resolve following the April 30, 2025 order, [Justice Barry-Smith] held a hearing on the defendants' motion[s] to dismiss, on September 30, 2025.

Ababio, No. 2584CV01134-BLS-1 Decision & Ord. at 4. The Ababio Decision and Order also applies to: Qi Shi v. Bloomingdales, LLC, Mass. Sup. Ct. No. 2584CV1138-BLS-1; Lamas v. Warby Parker, Inc., Mass. Sup. Ct. No. 2584CV1164-BLS-1; and Alexandrovicz v. Walmart, Inc., Mass. Sup. Ct. No. 2584CV1352-BLS-1.

at 11.  In particular, the court compared Section 19B to relevant provisions of: (1) the Zoning Act, MASS. GEN. LAWS ch. 40A, § 17; (2) the Massachusetts Administrative Procedures Act, MASS. GEN. LAWS ch. 30A, § 14; (3) Employment Discrimination under MASS. GEN. LAWS ch. 151B, § 5; and (4) Appeals from Insurance Commissioner Decisions under MASS. GEN. LAWS ch. 175, § 206D(f)(1). Id. at 8-11.  The court concluded that under Massachusetts law there are five "criteria to qualify as a person aggrieved":

- Plaintiff must suffer some infringement of their legal rights;

- The asserted right or interest must be one the statute is designed to protect — that is, within the statute's zone of concern;

- The harm alleged must be caused by the statutory violation;

- The harm alleged must be more than minimal or slightly appreciable; and

- The harm asserted must not be speculative.

Id. at 11.

The Ababio court ruled that while the first three criteria had been shown, the "plaintiffs [could not] show that they suffered a harm from defendants' violation of the notice provision that is more than minimal or slightly appreciable, or a harm that is more than speculative," and therefore "they [did] not qualify as 'persons aggrieved' by a violation of the Lie Detector Statute." Id. at 13.  Having failed in their burden by

[13]

pleading only a notice violation, the actions were dismissed for lack of statutory standing as "persons aggrieved" under Massachusetts law. Id.

In a footnote, however, the Ababio court further explained that the result would likely be different if the notice violation was -- as here -- **combined** with the use of a lie detector test. In that situation, according to that court, a plaintiff is aggrieved and has **two** claims: one for lack of notice and another for being administered a lie detector test:

> A different conclusion is likely if a company violates the Lie Detector Statute by using lie detectors **and** failing to provide the required notice to applicants. In those circumstances, it is easy to imagine how violation of the notice provision could lead to appreciable harm to an applicant. That person, having not received the disclosure that employers cannot use lie detector tests, might be exposed to a lie detector test in violation of the statute, or worse, subject to a negative employment consequence as a result of the impermissible lie detector test. Had the person been properly armed with knowledge of his rights due to the statutory disclosure, the person presumably could avoid being subject to the unlawful lie detector test. In that manner, violation of the notice provision would have caused an appreciable harm to employees or unhired applicants to a company that impermissibly used lie detector tests. This discussion likewise highlights that the inclusion of "person aggrieved" in subsection 4 does not render the civil claim for statutory damages a dead letter when based upon a violation of the notice provision. If a job applicant does not receive the statutory notice concerning lie detector tests, and then is subject to an unlawful lie detector test, then that person's lawsuit under § 19B(4) presumably could seek statutory damages for each of the two violations of subsection 2: the use of the lie detector test and the failure to provide the required notice.

[14]

Ababio, No. 2584CV01134-BLS-1, Decision & Ord. at 12 n. 2.

This Court agrees with Justice Barry-Smith's thoughtful analysis, adopts it, and applies it here. As posited in the footnote 2 Ababio hypothetical, Korn is a "person aggrieved" under Section 19B because he has sufficiently pleaded a notice violation **and** a lie detector test administration. See generally, FAC. Accordingly, Korn, as a "person aggrieved" under the Lie Detector Statute, has statutory standing under Massachusetts law.[3]

### C. Korn has a Private Right of Action to Enforce the Notice Provision of the Statute in Concert with the Lie Detector Test Administration Claim.

Korn has a private right of action to enforce the notice provision of the statute. Korn starts with the statutory language that: "Any person aggrieved by a violation of

---

[3] This Court has an independent obligation to inquire into its subject matter jurisdiction, including Article III standing. See United States ex rel. Sargent v. Collins, 165 F.4th 102, 107 (1st Cir. 2026); Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006). Korn has Article III standing because both a notice violation and an administration of a lie detector test is alleged. See Baker v. CVS Health Corp., 717 F. Supp. 3d 188, 192 (D. Mass. 2024) (Saris, J.) (Article III standing found where no notice was given and administration of a lie detector test was alleged); cf. Goldstone v. Deloitte Consulting LLP, No. 25-CV-11875-WGY, 2026 WL 296541 (D. Mass. Feb. 4, 2026) (remanding case for lack of Article III standing); Crane v. Cheesecake Factory Inc., No. 25-CV-11727-ADB, 2025 WL 4066478, at *3 (D. Mass. Dec. 8, 2025) (appeal filed) (Burroughs, J.) (same); Saint Cyr, 2025 WL 2977935, at *4 (D. Mass. Oct. 22, 2025) (appeal filed) (same).

subsection (2) may institute . . . a civil action . . . ." Mass. Gen. Laws ch. 149, § 19B(4); FAC ¶ 6. The pinch point is whether Section 19B(2) includes subparagraphs (2)(a) and (2)(b).

Amazon argues that section 2 is different from subparagrapghs 2(a) and 2(b). Amazon Mem. at 10-14. More specifically, Amazon contends that subsection 2(b) was only intended for government enforcement. Id. at 13-14. Indeed, this is in accord with the Auguste court's ruling that "[t]here are two types of conduct that will violate § 19B: (i) to request . . . a job applicant to submit to a lie detector test or (ii) to discharge, not hire, demote or otherwise discriminate against a person who refuses to take one." Auguste, SUCV 14-3311-BLS1 at 14.

This argument, and the Auguste decision generally, was wholly rejected by the Ababio court. There, the court ruled:

> Defendants' interpretation illogically requires, without explanation, that [the court] ignore standard convention with respect to the numbering and ordering of statutory sections, subsections, and subparagraphs. Subsection 4's reference to subsection 2 necessarily includes *all* of subsection 2, including its subparagraphs 2(a) and 2(b). In Baker v. CVS Corp., the United States District Court reached the same conclusion:
>
>> "[T]he Lie Detector Statute authorizes suit by '[a]ny person aggrieved by a violation of subsection (2),' which includes the notice requirement."
>
> 717 F. Supp. 3d 188, 193 (D. Mass. 2024)[(quoting Mass. Gen. Laws ch.149, § 19B(4))]. Moreover, there

[16]

> is nothing inherently ambiguous, absurd, or nonsensical about subsections (3) and (4) providing criminal and civil remedies for the same scope of conduct, but using different words to refer to the prohibited conduct under the statute, where the meaning of those words is straightforward. See Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996) ("Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent.").

Ababio, No. 2584CV01134-BLS-1, Decision. & Ord. at 6-7. This Court, again, agrees with Justice Barry-Smith's more recent analysis of the Lie Detector Statute: under Massachusetts law, there exists a private right of action for a Section 19B notice violation, but likely concomitant with statutory standing if it is brought, as here, in conjunction with a lie detector administration claim that plausibly pleads injury.

III. **CONCLUSION**

For the reasons stated above, this Court is persuaded by the Superior Court's analysis in Ababio, and therefore, Amazon's motion to dismiss, ECF No. 21, is hereby DENIED.

**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[17]